[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a petition to enforce a Mechanic's Lien filed by Park Towne Builders, Inc. against Paul D. and Cecil J. Heyman (defendants). Jurisdiction is pursuant to G.L. 1956 (1984 Reenactment) § 34-28-10, as amended.
The facts pertinent to the instant case are as follows. In June, 1988 Frank Macedo, President of Park Towne Builders Inc., met with defendants to discuss renovations on four different areas of defendant's home located at 111 Irving Avenue, Providence, Rhode Island. At this meeting, Mrs. Heyman explained the work to be done and showed him diagrams of the carpentry work, as well as advertisements of the appliances to be installed. Subsequently, Mr. Macedo submitted a proposal for the renovation of four areas of the Heyman house. The defendants accepted plaintiff's July 6th proposal for the kitchen area and living room for a total contract price of $9579.00.
The contract entered into by the parties called for plaintiff to supply all the labor and materials for the following. In the kitchen, plaintiff agreed to dismantle and install new cabinets, new formica counters and back splash, a new exhaust fan, ceiling, appliances, and bay window. In the living room, plaintiff contracted to build wall and desk cabinets, install a new ceiling, crown molding, and window shutters. By the terms of the contract, defendants were to supply plaintiff with the kitchen cabinets, appliances, bay window, and window shutters. Plaintiff would supply all other materials.
Plaintiff began work on the Heyman home on November 1, 1988 and completed renovations on December 16, 1988. During this time plaintiff submitted two bills to defendants totalling $9,743 which defendants promptly paid. After completion of the job, plaintiff submitted another bill for $9,986 dated January 2, 1989. The Heymans immediately disputed this bill and refused to pay. In accordance with G.L. § 34-28-4 plaintiff mailed by certified mail, return receipt requested, a Notice of Intention to Claim Lien to defendants on February 21, 1989. Plaintiff filed said notice along with a Notice of Lis Pendens in the Records of Land Evidence of the City of Providence in accordance with G.L. §34-28-10, 11 and 12 on March 27, 1989. On April 11, 1989, plaintiff filed this petition to enforce the lien in the amount of $9,986.
The defendants, while admitting to contracting with plaintiff for additional work, dispute plaintiff's price of $9,986. Defendants allege that plaintiff never completed some of the work contracted for and then failed to credit defendants for the work not done. Defendants also contend that plaintiff performed some of the work in a defective manner, causing defendants to pay to have the defects corrected. Therefore, after taking into consideration credit for work not done and defective work repaired, defendants contend that only the amount of $59 is owed. Alternatively, plaintiff admits that defendants are entitled to certain credits, but maintains that the additional work contracted for is due and owing in the amount of $6,881.
Rhode Island's Mechanic Lien Law, first enacted in 1847, is designed "to prevent unjust enrichment of one person at the expense of another." Faraone v. Faraone, 413 A.2d 90, 91 (R.I. 1980). Our Supreme Court has held that the ultimate intent of the law is "to afford a liberal remedy to all who have contributed labor and materials towards adding to the value of the property to which the lien attaches." Roofing Concepts, Inc. v. Barry,559 A.2d 1059, 1061 (R.I. 1989) (citing Field Slocomb v.Consolidated Mineral Water Co., 25 R.I. 319, 32, 44 A. 757, 758 (1903)). In a petition to enforce a lien, the petitioner bears the burden of proving every item of its claim, by a fair preponderance of the evidence F.D. McKendall Lumber Co. v.DiDonato, et al, 82 A.2d 403, 404, 78 R.I. 401, 402 (1951).
In the instant case, both parties filed post-trial memoranda. In light of the evidence presented at trial, this Court finds certain facts uncontested. First, it is uncontradicted that the parties agreed to a contract price of $9,579 for the renovation of the defendant's kitchen and living room and that defendants have thus far paid plaintiff a total of $9,743. Of the work contracted for, both parties agree that plaintiff did not complete the following work for which the following respective amounts should be credited to the contract price: oven installation — $265; exhaust fan — $120. Both parties also agree that plaintiff did not install the window shutters as called for by the contract. Although plaintiff testified at trial that a reasonable credit for this work is $500, plaintiff contends in his post-trial memo that a more reasonable price is $200. According to plaintiff, the $500 price testified to at trial included materials which, according to the parties' contract, was to be supplied by defendant. This Court rejects this argument. At trial, plaintiff not only admitted on cross-examination that $500 is a reasonable credit for the shutters, but he also responded to his own attorney's question on redirect with the same $500 figure. Therefore, this Court is satisfied that $500 is a reasonable value for the shutter work contracted for but not completed.
In addition, this Court finds that defendants are due a credit in the amount of $479.28 for repair of the bay window that plaintiff defectively installed. Applying these credits, the contract price is thus reduced from $9,579 to $8,214.72.
CREDITS FOR DEFECTIVE WORK
Defendants also contend that plaintiff performed certain electrical work during the renovation in a defective manner. Plaintiff is not a licensed electrician. Plaintiff admitted that he installed the electrical outlets in the kitchen but did not install a junction outlet. Defendants presented Mr. Governo, an electrician qualified as an expert, who represented to the court that it was improper for the plaintiff to have installed the outlet without a junction. According to Governo, the reasonable cost of correcting this defect is $55. This Court finds this to be a reasonable value and credits defendant this amount.
This Court also finds the expert testimony with regard to rewiring the television set and thermostat credible. At trial, plaintiff admitted that after recessing the TV in the wall, he rewired it. Mr. Governo, upon examining the wiring of the TV, discovered that there was a wire missing. Mr. Governo testified and this Court so finds, that $135 is a reasonable price for correcting the faulty wiring. Defendants contend that plaintiff rewired the defendant's thermostat with the wrong type of wire; more specifically, that he used 12 gauge telephone wire rather than the required 16 gauge. This, according to Mr. Governo, caused the thermostat to fail and cost defendants a total of $20 to replace. This Court finds defendants are due and owed a credit in this amount. Taking into consideration reimbursement for repairs of faulty or defective work, as well as the credit for work contracted for but not completed, the price of the contract is further reduced to $8004.72.
"EXTRA" WORK
The evidence also demonstrated that plaintiff performed certain "extra" work outside the scope of the contract. One of these "extras" included replacing the formica countertop. Mrs. Heyman testified that, after plaintiff had installed the countertop, she decided she did not like the color and asked plaintiff to remove it and replace it with a different color. Plaintiff, who did as Mrs. Heyman asked, must therefore be compensated for this work.
Although there was no direct testimony as to what is a reasonable and fair value of replacing the countertop, plaintiff did provide for this work in his Account and Demand Statement. [Plaintiff's Exhibit 6]. According to the Account and Demand, material for this job cost a total of $142.72. As for labor, plaintiff has listed stripping the formica and putting in new formica as one of several jobs completed over a four day period. Therefore, it is unclear from the Account and Demand exactly how long it took plaintiff to replace the formica. In plaintiff's Exhibit 21, prepared by Mrs. Heyman and David Turcotte, the carpenter qualified as an expert, it is suggested that a reasonable labor charge for this work would be $200. This Court rejects this figure as too low and reaches its own assessment. Plaintiff testified that he charges $28 an hour and his foreman receives $27 an hour. Given plaintiff's Account and Demand, this Court finds that it is reasonable to conclude that it took two (2) men seven (7) hours to strip and replace the formica. In computing the hourly rate, this equals a total charge $385 for labor. Therefore, this Court finds that a reasonable extra charge including labor and materials, for stripping and replacing the formica countertop is $527.72.
Both parties agreed that building shelves in the back pantry is an "extra" to the original contract. The parties orally agreed that plaintiff would receive $200 for building these shelves. Still another item conceded as an "extra" was the installation of piping for a second floor bathroom. The parties agree that $250 is the figure quoted for this work but disagree as to what is included in this $250 price. Plaintiff testified that this quoted price included only the installation of the soil pipe and that moving the doorbell chimes, thermostat and light switch to make room for the piping, as well as installing hot and cold water pipes, was not included in this figure. This Court finds this testimony incredible. At the time plaintiff quoted this price to defendants, he was aware of the defendants future plans to install a bathroom upstairs. He also knew that the defendants wanted the piping installed while the living room was being renovated so that they could avoid having the living room torn apart a second time. It defies common sense for the defendants' to request the installation of only a soil pipe and not the water pipes as well. Plaintiff was also aware, prior to quoting a price to Mrs. Heyman, where in the wall the piping was to be installed. Therefore, this Court finds that the plaintiff agreed to install soil and water pipes for $250 and that moving the thermostat, door chimes, and light switch is included in this price.
Another admitted extra was building a shelf to recess the television. Once again there was no direct testimony by plaintiff as to how much time it took to complete this job. There was testimony that plaintiff had to remove and rehang in order to complete the task. Defendants entered into evidence pictures of the work (See Defendant Exhibit D E). After reviewing these pictures and the testimony of plaintiff, this Court finds that it is fair and reasonable to conclude that two (2) men working two (2) hours could complete this work. Therefore, using plaintiff's hourly wage, this Court finds that $112 is a reasonable charge for recessing the television.
Plaintiff also contends that installing a garbage disposal is an "extra" to the contract for which he is seeking compensation. While admitting that a garbage disposal was not part of the contract, defendants argue that they never requested a new garbage disposal and that it was only after it was in place that they discovered it. Plaintiff, however, testified that he informed the defendants that their old garbage disposal was leaking and that Mr. Heyman authorized him to replace it. Regardless of whether the defendants authorized the installation of the disposal prior to its installation, it is clear to this Court that they accepted the work and at the time the work was completed expected to pay a reasonable price for the installation. In reviewing the plaintiff's Account and Demand Statement and the work done on the day the garbage disposal was installed, this Court concludes that it took plaintiff one-half (1/2) a day to install the garbage disposal. This equals $112 in labor. Based on the Account and Demand, this Court finds that $125.00 is a reasonable price for materials. Therefore, the Court finds that $247.00 is a fair and reasonable charge for the installation of the garbage disposal.
Plaintiff testified his installation of a temporary sink for defendants constitutes an "extra." Testimony showed that installing the temporary sink consisted of placing old faucet handles on the new sink. This Court finds that it is fair and reasonable to grant plaintiff one-half (1/2) hour labor for this job. Therefore, plaintiff is granted $14 as an extra charge for installing the temporary faucet.
There was also a dispute between the parties as to whether the kitchen countertop had to be shortened, and if so, whether it was done by plaintiff. Even though both defendants adamantly deny that the countertop was ever shortened, the expert witness presented by defendants testified that the counter had indeed been shortened. This Court accepts the testimony of the expert witness and finds that a credit is due and owing to plaintiff. Given that it was a formica countertop, this Court finds that two (2) hours is a reasonable amount of time to complete this task and therefore finds that plaintiff is owed $56 as an extra charge for this work.
Defendant's carpenter expert also testified that the following work was "extra" and outside the scope of the original contract: installing desk cabinet drawers, changing door casings; installing cabinet doors in pantry; installing panel molding in living room; and building new radiator cover. Mr. Turcotte also testified that $1,168.72 was a fair and reasonable charge for this extra work. This Court accepts Mr. Turcotte's testimony and grants plaintiff's claim for the above-mentioned work in the amount of $1,168.72.
In addition to the above-mentioned "extras," plaintiff seeks compensation for a number of other tasks that he contends were outside the scope of the contract. This Court rejects plaintiff's claim for these extras for the following reasons.
First, plaintiff seeks compensation for installing the oven's gas pipe and moving the kitchen drawers to make room for this pipe. Both parties agree that installing appliances was a part of the initial proposal. Plaintiff, however, contends that Mrs. Heyman initially planned to purchase an electric oven but later changed her mind. Mrs. Heyman denies this and testified that she showed plaintiff a brochure of the oven she was purchasing prior to plaintiff preparing the proposal. This Court finds Mrs. Heyman's testimony credible with regard to this matter and therefore denies plaintiff's claim for work involving the installation of the gas line.
Plaintiff contends that Mrs. Heyman changed her mind regarding whether to put backs on the bookcases and with respect to the height of the fluted columns in the living room. In addition to the testimony offered by both parties regarding these matters, plaintiff also introduced diagrams of the work to be done. (Plaintiff Exhibit 2). After carefully reviewing these plans and considering all the testimony regarding this matter, this Court finds that fluted columns to the ceiling and bookshelves with backs were part of the parties' original proposal. Therefore, this Court denies plaintiff's claim regarding this work.
The porch roof is another extra for which plaintiff seeks compensation. Although the contractor's repairing the porch roof is clearly outside the scope of the original proposal, this Court found credible Mr. Heyman's testimony that plaintiff offered to "throw in" repair of the roof as part of proposal. In addition, there was evidence to the effect that the job was not done correctly and this required the defendants to hire someone else to repair the faulty work. Taking all of this into consideration, this Court denies plaintiff's claims with regard to repair of the roof.
ELECTRICAL WORK
The final area of contention between the parties is the electrical work performed by plaintiff. At the time the proposal was prepared, the electrical plans were not yet available. Therefore, as part of the contract, plaintiff and defendants agreed to a $500 electrical allowance for each room. In plaintiff's Account and Demand Statement, he lists a number of electrical tasks that he claims are "extra," that is, in excess of the $500 allowance. In comparing plaintiff's list of "extra," electrical work to the electrical plans for the living room, (Defendant's Exhibit B) this Court finds only a few small items that are called for by the plans but not on the list of extras. On the other hand, this Court found the testimony of Mr. Governo, the electrical expert, credible. Mr. Governo testified that the electrical labor and materials performed by plaintiff, in both the living room and kitchen, but not including the hallway track lighting, totalled $1,394.71. Given that the proposal called for a $1,000 allowance, this Court finds that plaintiff is owed $394.71. In addition, this Court grants plaintiff credit for the purchase and installation of the track lighting in the amount of $242.72 for materials and $224.00 for labor.
CONCLUSION
In summation, this Court finds that the parties entered into a contract for $9,579. In the course of the contract plaintiff performed further work (including electrical) in the amount of $3,431.87. This Court finds that additional work totalling $885, was contracted for but not performed by plaintiff. This Court finds plaintiff performed certain work in a faulty manner and grants defendants a credit in the amount of $689.28 for repair of same. Accordingly, plaintiff is due and owed a total of $1,693.59.
Counsel shall submit the appropriate order for entry.
 APPENDIX A
CONTRACT PRICE $9,579.00
 CREDITS
Work not done
 1. Oven Installation 265.00
 2. Exhaust Fan 120.00
 3. Window Shutters 500.00
 ______
 885.00 8,694.00
Facility Work Repaired
 1. Bay Window 479.28
 2. Kitchen-Junction 55.00
 3. Rewire T.V. 135.00
 4. Thermostat 20.00
 ______
 689.28 8,004.72
EXTRAS
 1. Formica Counter Materials 142.72
 Labor 385.00
 2. Pantry Shelves — contracted price 200.00
 3. Bathroom Pipes 250.00
 4. Recessing T.V. 112.00
 5. Garbage Disposal Materials 125.00
 Labor 112.00
 6. Temporary Sink 14.00
 7. Shorten Countertop 56.00
 8. Desk Cabinet Draws ]
 9. Door Casings ]
 10. Cabinet Doors Pantry ] 1,168.72
 11. Panel Molding ]
 12. Radiator Cover ________
 2,565.44
EXTRA ELECTRICAL 10,570.16
 Total Value Work 1,394.71
 Track Lighting Material 247.72
 Labor 224.00
 ________
 1,866.43
 Less Proposal Allowance 1,000.00
 ________
 Total Electrical 866.43
 11,436.59
 Less Amount Paid 9,743.00
 Balance Due $1,693.59